# CIRCUIT COURT OF FAIRFAX COUNTY

Richard Humphrey

v.

Leewood Healthcare Center et al.

May 31, 2007

Case No. CL-2007-663

BY JUDGE JANE MARUM ROUSH

This matter came on for a hearing on May 4, 2007, on the demurrer of the defendants, Leewood Healthcare Center, Leewood Investments & Associates, L.L.C., and Grace Healthcare, L.L.C. (collectively, the "defendants"), to Count IV of the plaintiff's complaint alleging violations of the Virginia Consumer Protection Act ("VCPA"). At that time, the court took the demurrer under advisement. I have now reviewed in detail the pleadings and considered the arguments of counsel. For the following reasons, the demurrer will be sustained in part, with leave for the plaintiff to amend within twenty-one days to allege more specifically the factual basis of Count IV.

## Background

In deciding a demurrer, the court must take as true all facts properly pleaded in the complaint and all reasonable and fair inferences that may be drawn from those facts. *W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 384, 478 S.E.2d 295 (1996). Plaintiff Richard Humphrey alleges the following.

Leewood Healthcare Center ("Leewood") is a nursing home located in Annandale, Virginia. On January 7, 2006, the plaintiff's father Jack Humphrey ("Mr. Humphrey"), aged 86, was admitted to Leewood because he was suffering

from dementia and various other conditions requiring nursing home care. The staff at Leewood was aware, or should have been aware, of Mr. Humphrey's dementia, confusion, agitation, tendency to wander, and inability to walk safely without assistance. Prior to Mr. Humphrey's admission to Leewood, employees of Leewood represented to Mr. Humphrey and his family that they could provide a level of care appropriate to Mr. Humphrey's needs.

On January 7, 2006, soon after he was admitted to Leewood, Mr. Humphrey wandered from the building and was found by staff outside of the building. Two days later, on January 9, 2006, ambulance personnel found Mr. Humphrey lying in an alley outside the nursing home while they were responding to an unrelated call. The staff at Leewood was unaware that Mr. Humphrey had again wandered from the facility. A receptionist at the nursing home ignored an alarm that Mr. Humphrey set off when he left the building. Mr. Humphrey was taken to Inova Fairfax Hospital where it was discovered that he had broken his hip. While still at the hospital, Mr. Humphrey suffered a fatal heart attack as a result of the hip fracture.

In Count IV of his complaint, the plaintiff alleges that the defendants misrepresented the level of care they could provide to Mr. Humphrey and that Mr. Humphrey's death resulted from these misrepresentations. The plaintiff alleges that the defendants' actions constitute a violation of the VCPA.

*Discussion*

The purpose of a demurrer is to determine whether a complaint states a cause of action upon which the requested relief may be granted. *Welding, Inc. v. Bland County Service Auth.*, 261 Va. 218, 226, 541 S.E.2d 909 (2001).

The defendants first argue that the plaintiff's VCPA claim should be barred because it does not involve a "consumer transaction" as defined by the VCPA in Virginia Code § 59.1-198. However, subsection (1) of that section provides that transactions involving "services" to be used for "family" purposes constitute consumer transactions. The court holds that nursing home care can be a "service" to be used for "family" purposes within the meaning of the VCPA.

The defendants next argue that the plaintiff's VCPA claim should be dismissed because it is barred by Va. Code § 59.1-199(A). That statute provides that the VCPA does not apply to:

> Any aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States, or the formal advisory opinions of any regulatory body or official of this Commonwealth or the United States.

The defendants argue that the plaintiff's claim is barred by that section because the transactions in question are "authorized" by Va. Code § 32.1-127, which authorizes the Board of Medicine to promulgate regulations for the nursing home industry, and by the Virginia Medical Malpractice Act, which sets forth special procedures for medical malpractice claims.

Va. Code § 59.1-199(A) has never been construed by Virginia's appellate courts, but the statute has been considered by several federal courts. In *Pruett v. Moon* (*In re Moon*), 1997 Bankr. LEXIS 2346 (E.D. Va. 1997), the court considered this provision and stated that:

> It is important . . . to distinguish "authorized" from silence and absence of prohibition. The failure of an agency to forbid a particular practice does not mean that the agency has "authorized" the practice.

*Id.* at 70-71 (citing Edward P. Nolde, *Consumer Protection Law,* 27 U. Rich. L. Rev. 725, 727-28 (1993)). In *Beaty v. Manor Care, Inc.,* 2003 U.S. Dist. LEXIS 25044 (E.D. Va. 2003), relied on by the plaintiff, the court considered this statute in the context of a claim against a nursing home. In that case, the court opined that, although nursing homes may be highly regulated, "[t]his Section does not exempt entire industries from the [VCPA]." *Id.* at 14. The court in that case allowed the VCPA claim because the laws relied on by the defendants did not regulate the particular type of transaction alleged by the plaintiff. *Id.* at 15.

In this case, the laws relied on by the defendants cannot be said to "authorize" the acts alleged by the plaintiff. Section 32.1-127 and the Virginia Medical Malpractice Act both contain many provisions applicable to nursing homes. However, neither of them "authorize" nursing home employees to misrepresent the level of care provided in their facilities, as the plaintiff alleges occurred in this case. The court therefore holds that the plaintiff's VCPA claim is not exempted under Va. Code § 59.1-199(A).

The defendants next argue that the plaintiff's VCPA claim should be dismissed to the extent it seeks personal injury damages because only out-of-pocket pecuniary losses may be recovered under the VCPA. The VCPA allows plaintiffs to recover "actual damages." Va. Code § 59.1-207(A). The VCPA does not define that term. There is a dispute among the circuit courts over whether it should include pecuniary losses only or other damages as well. In *Deane v. Novacare Orthotics & Prosthetics East, Inc.,* 50 Va. Cir. 418 (Rockbridge Co. 1999), Judge McGrath ruled that:

[E]ven considering the remedial nature of the statute, and the fact that it should be broadly construed, this court feels that a fair reading of the Consumer Protection Act indicates that the "actual damages" allowed by it are limited to only those pecuniary, out-of-pocket losses that Plaintiff has sustained. An action for a violation of the Consumer Protection Act is not the correct avenue to recover other "personal injury" damages.

In *Devonshire v. Euraupair International*, 40 Va. Cir. 149 (Fairfax Co., 1996), Judge Smith ruled that the plaintiffs "are not entitled to recovery of damages [for bodily injuries] in this case pursuant to the VCPA." Conversely, in *Lambert v. Downtown Garage, Inc.*, 47 Va. Cir. 88, 89 (Spotsylvania Co. 1998), Judge Ledbetter held that:

The [VCPA] allows any person "who suffers loss as the result of a violation" to "initiate an action to recover actual damages. . . ." Nowhere in the Act is "loss" limited to property interests, and the defendants cite no authority for such a limitation.

Presumably, in the absence of limiting language, the General Assembly intended no unusual restrictions on the term "actual damages" as used in the VCPA. Accordingly, this court will give the term "actual damages" its common legal definition, as follows:

Real, substantial, and just damages, or the amount awarded to a complainant in compensation for his actual and real loss *or injury*, as opposed on the one hand to "nominal" damages, and on the other to "exemplary" or "punitive" damages. Synonymous with "compensatory damages" and with "general damages."

*Black's Law Dictionary* 390 (6th ed. 1990) (emphasis added). Thus, the court holds that "actual damages" as used in the VCPA is not limited to out-of-pocket pecuniary losses.

Finally, the defendants argue that the plaintiff's VCPA claim should be dismissed because the plaintiff's allegations do not have the necessary specificity. The plaintiff agreed during oral argument to add more detail in an amended complaint based on information not in his possession when the original complaint was filed. The court therefore sustains the demurrer to the VCPA claim on this basis with leave to amend for the plaintiff to allege the VCPA claim with the requisite specificity.

## Conclusion

For the foregoing reasons, the demurrer to Count IV will be sustained in part, with leave for the plaintiff to amend it within twenty one days to allege with more specificity the misrepresentations that the plaintiff contends violated the VCPA.

The order should also reflect the rulings made at the May 4, 2007, hearing overruling the demurrer as to punitive damages, and sustaining the demurrer with leave to amend as to the survivorship count.